IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

UNITED STATES OF AMERICA

v.                                              CRIMINAL ACTION NO. 3:07-00055

ROBERT LEE STINSON

MEMORANDUM OPINION AND ORDER

On August 6, 2007, this Court began a bench trial at which the defendant asked to
be found not guilty on the basis that the offense charged, as applied to the facts of his case, violates
the *Ex Post Facto* Clause of the Constitution.  The Court then recessed the trial to consider the
parties' arguments on this issue.  Upon review of those arguments, the Court **FINDS** the defendant
not guilty of the charge contained in the superceding indictment as such a conviction would violate
the *Ex Post Facto* Clause.

I.
FACTUAL AND PROCEDURAL HISTORY

The parties have agreed as to the relevant facts of this case and submitted a
"Stipulation of Facts" at the bench trial.  The Stipulation provides:

> 1.  On March 11, 1993, the defendant was
> charged by Information in Michigan's 36th District
> Court with Criminal Sexual Conduct – 1st Degree
> (Person Under 13), a felony, and Criminal Sexual
> Conduct – 2nd Degree (Person Under 13), a felony.

> 2.  On September 20, 1993, the defendant pled
> guilty to the felony offense of Criminal Sexual
> Conduct – 1st Degree (Person Under 13).

3.   On October 1, 1993, the defendant was sentenced to a term of imprisonment of not less than four nor more than fifteen years, with credit for 225 days served in custody prior to the sentencing date.

4.   On August 16, 1996, the defendant was released on parole.   At the time of his release, defendant was notified that, as a condition of his parole, "Pursuant to Public Acts 295 and 287 of 1994, you must register as required by the sex offender registration act.  You must also provide notification in person with the local law enforcement agency, sheriff's department, or state police within ten days of your parole release and any address change.  You must provide a completed copy of the Michigan Sex Offender Registration Form to your field agent within ten days of your parole release and any address change."

5.   On August 19, 1996, the defendant signed a Michigan Sex Offender Registration Form showing an address of 735 Sloan Street, Detroit, Michigan.

6.   On January 27, 1997, the defendant signed a Michigan Sex Offender Registration Form showing a change of address to 701 E. Girard Blvd., Detroit Michigan.

7.   On April 17, 1997, the defendant completed a Michigan Sex Offender Registration Form showing a change of address to 2952 Alter, Apt. 202, Detroit, Michigan.  This form stated that defendant's registration period was for twenty-five years.

8.   On August 16, 1998, the defendant was discharged from parole supervision.

9.   On February 3, 1999, the defendant notified Michigan Sex Offender Registration officials of a change of address to 13321 Rochelle, Detroit, Michigan.

10. On June 5, 2000, the defendant notified the Michigan Sex Offender Registration officials of a change of address to 5044 Crane Street, Detroit, Michigan.

11. On October 17, 2005, the defendant was hired by the City of Huntington, West Virginia. His address as shown on his employment records was 1938 10th Avenue, Huntington, West Virginia 25701.

12. On November 28, 2005, the defendant was the driver of a motor vehicle which was involved in a motor vehicle accident in the City of Huntington, West Virginia.

13. In February 2007, the defendant traveled from West Virginia to South Point, Ohio to go fishing at Jerry's Lake.

14. On March 8, 2007 the defendant was arrested for the federal offense of failure to register as a sex offender. After being warned of his <u>Miranda</u> rights he gave the following written statement:

"I came to Huntington WVA to help take care of my aunt and cousin who was sick. My aunt had just had a heart bypass. My cousin has lupus. I knew I was suppose to register as a sex offender. If I did I would not have a job right now."

During this interview, the defendant also admitted that he knew he was required to register as a sex offender for a period of twenty-five years. The defendant admitted that he did not tell Michigan that he was leaving because he feared the authorities in Michigan would not permit him to leave. The defendant admitted that he did not inform the West Virginia State Police of his new residence in West Virginia because he believed that his status as a sex offender would hinder his chances of obtaining employment. Finally, the defendant admitted that within the past six months, he had traveled from West Virginia to Columbus, Ohio to visit family.

-3-

15.  The defendant did not inform Michigan officials of his move from Michigan to West Virginia.

16.  As of his arrest on March 8, 2007, the defendant had not registered as a sex offender with West Virginia officials.

17.  On March 8, 2007, the defendant appeared before United States Magistrate Judge Maurice Taylor.  Magistrate Taylor ordered the defendant conditionally released.  One of the release conditions was that the defendant register as a sex offender with the State of West Virginia as required by law.

18.  The defendant reported to the Huntington Detachment of the West Virginia State Police after his release on March 8 to register as a sex offender.  He could not register because the State Trooper then charged with sex offender registration, Trooper Schoolcraft, was not available to complete the registration.  Due to his work schedule and his work on a murder case, Trooper Schoolcraft was not available for sex offender registration until March 14, 2007.  On that date the defendant registered as a sex offender.

*Stipulation of Facts* (Entered on Aug. 6, 2007).


On March 20, 2007, the Grand Jury returned a one-count indictment against the defendant charging him with failing to register or update his registration as a sex offender as required by the Sex Offender Registration and Notification Act (SORNA), 42 U.S.C. § 16901 *et seq*., in violation of 18 U.S.C. § 2250(a).  The defendant moved to dismiss the indictment on a variety of grounds,[1] but the Court denied the defendant's motion by Memorandum Opinion and

---

[1]The defendant's arguments in his motion included, inter alia: (1) violations of both the
(continued...)

Order entered on June 21, 2007.  On August 1, 2007, the Grand Jury returned a superceding indictment against the defendant for the same charge.  The superceding indictment added language which provides that "[i]n or about February 2007, defendant ROBERT LEE STINSON traveled in interstate commerce from West Virginia to Ohio." *Superceding Indictment*, at ¶ 3.  The Court now must determine whether or not the defendant can be found guilty of this charge.

## II.
## STATUTORY AND REGULATORY BACKGROUND

Although the Court previously set forth the statutory and regulatory history of SORNA in the Memorandum Opinion and Order entered on June 21, 2007, it is relevant to the present issue and bears repeating here.  In 1994, Congress passed the Violent Crime Control and Law Enforcement Act, which included Title XVII, the Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Act, Pub. L. Nos. 103-322.  In part, Title XVII required sex offenders to register their addresses with state law enforcement for a minimum period of ten years after release from prison. 42 U.S.C. § 14071(b)(6).  The first time a sex offender knowingly failed to register was deemed a misdemeanor with a potential sentence of up to one year imprisonment.  For a second offense, a sex offender faced up to ten years imprisonment. 42 U.S.C. § 14072(i).[2]

---

[1](...continued)
constitutional separation of powers and the non-delegation doctrines; (2) violation of the Due Process Clause; (3) violation of the Commerce Clause; (4) violation of the *Ex Post Facto* Clause; (5) the Interim Rule is contrary to Congressional intent; and (6) the Interim Rule is invalid because the Attorney General failed to follow the procedures required by the Administrative Procedures Act.

[2]This statute will be repealed three years after July 27, 2006, which is the effective date of SORNA.  Pub. L. Nos. 109-248, Title I § 129, 120 Stat. 600 (2006).

On July 27, 2006, Congress enacted the Adam Walsh Child Protection and Safety Act of 2006 and SORNA.  Pursuant to SORNA, a sex offender who is required to register under the Act and who travels in interstate commerce may be imprisoned for not more than ten years if such person knowingly fails to register or update his or her registration as required by the Act. 18 U.S.C. § 2250(a).[3]  The registration requirements for SORNA are set forth in 42 U.S.C. § 16913.  For offenders such as the defendant who were convicted prior to SORNA's enactment and are unable to comply with the initial registration requirements, Congress provided in § 16913(d):

> The Attorney General shall have the authority to specify the applicability of the requirements of this subchapter to sex offenders convicted before July 27,

---

[3]Section 2250(a) provides, in full:

> (a) In general.–Whoever–
>
> (1) is required to register under the Sex Offender Registration and Notification Act;
>
> (2)(A) is a sex offender as defined for the purposes of the Sex Offender Registration and Notification Act by reason of a conviction under Federal law (including the Uniform Code of Military Justice), the law of the District of Columbia, Indian tribal law, or the law of any territory or possession of the United States; or
>
> (B) travels in interstate or foreign commerce, or enters or leaves, or resides in, Indian country; and
>
> (3) knowingly fails to register or update a registration as required by the Sex Offender Registration and Notification Act;
>
> shall be fined under this title or imprisoned not more than 10 years, or both.

18 U.S.C. § 2250(a).

2006 or its implementation in a particular jurisdiction, and to prescribe rules for the registration of any such sex offenders and for other categories of sex offenders who are unable to comply with subsection (b) of this section.

42 U.S.C. § 16913(d). In addition, for notifying sex offenders with prior convictions of their obligations under SORNA, Congress provided that "[t]he Attorney General shall prescribe rules for the notification of sex offenders who cannot be registered in accordance with subsection (a) of this section." 42 U.S.C. § 16917(b).[4]

---

[4]Section 16917(a) states:

(a) In general

An appropriate official shall, shortly before release of the sex offender from custody, or, if the sex offender is not in custody, immediately after the sentencing of the sex offender, for the offense giving rise to the duty to register--

(1) inform the sex offender of the duties of a sex offender under this title and explain those duties;

(2) require the sex offender to read and sign a form stating that the duty to register has been explained and that the sex offender understands the registration requirement; and

(3) ensure that the sex offender is registered.

42 U.S.C. § 16917(a).

-7-

It was not until February 28, 2007, however, that the Attorney General published the Interim Rule, making SORNA applicable to the defendant.  Specifically, in 28 C.F.R. § 72.3, the Attorney General stated that SORNA's requirements "apply to all sex offenders, including sex offenders convicted of the offense for which registration is required prior to the enactment of that Act."  28 C.F.R. § 72.3.  In the Supplementary Information of the Rule, the Attorney General explained that this Rule makes "it indisputably clear that SORNA applies to all sex offenders (as the Act defines that term) regardless of when they were convicted" and it forecloses all claims that it does not apply to them "because a rule confirming SORNA's applicability has not been issued." 72 Fed. Reg. 39, 8894, 8896 (Feb. 28, 2007) (to be codified at 28 C.F.R. pt. 72).

Given the stipulation of facts recited above, the defendant argues he cannot be convicted of violating SORNA because it is prohibited by the *ex post facto* doctrine.  For the following reasons, the Court agrees with the defendant.

### III.
### DISCUSSION

Article I, Section 9, clause 3 of the United States Constitution provides that "[n]o Bill of Attainder or ex post facto Law shall be passed." U.S. Const., art. I, § 9, cl. 3.  In *Weaver v. Graham*, 450 U.S. 24 (1981), the United States Supreme Court explained that *ex post facto* prohibits Congress from enacting a law "which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed." 450 U.S. at 28 (internal quotation marks and citations omitted).  In deciding whether a statute violates *ex post facto*, two factors must be present: "it must be retrospective, that is, it must apply to events occurring

before its enactment, and it must disadvantage the offender affected by it." *Id*. at 29 (footnotes and citations omitted).  The Supreme Court further stated:

> Critical to relief under the *Ex Post Facto* Clause is not an individual's right to less punishment, but the lack of fair notice and governmental restraint when the legislature increases punishment beyond what was prescribed when the crime was consummated. Thus, even if a statute merely alters penal provisions accorded by the grace of the legislature, it violates the Clause if it is both retrospective and more onerous than the law in effect on the date of the offense.

*Id*. at 30-31 (footnote omitted).


In this Court's prior Memorandum Opinion and Order, the Court addressed whether the registration requirements established by SORNA in and of themselves violate the *Ex Post Facto* Clause.  In determining that they did not, the Court relied upon the Supreme Court's decision in *Smith v. Doe*, 538 U.S. 84 (2003).  In *Smith*, the Supreme Court was asked to decide whether the registration requirement contained within Alaska's Sex Offender Registration Act violated the *Ex Post Facto* Clause. 538 U.S. at 89.  The Alaskan Act contained both a registration requirement and a notification system, and it applied retroactively to those previously convicted of sex or child kidnaping offenses. *Id*. at 90.  The constitutionality of the Act was challenged by two individuals who were required by the Act to comply with the registration requirements, but who were convicted of sex offenses prior to the Act's passage. *Id*. at 91.  In finding the Act did not violate the *Ex Post Facto* Clause, the Supreme Court found the regime it created was civil and nonpunitive.  However, the Supreme Court specifically recognized that:

> A sex offender who fails to comply with the reporting requirement may be subjected to a criminal

> prosecution for that failure, but any prosecution is a
> proceeding separate from the individual's original
> offense.  Whether other constitutional objections can
> be raised to a mandatory reporting requirement, and
> how those questions might be resolved, are concerns
> beyond the scope of this opinion.

*Id*. at 101-02.  It is clear in reading *Smith* that the primary focus of the Supreme Court was whether

the registry and notification requirements themselves violated the *Ex Post Facto* Clause.  In relying

upon the analysis in *Smith*, this Court denied the defendant's *ex post facto* challenges to SORNA's

registry requirements. *See Memorandum and Opinion*, at 12-14.  However, the issue currently before

the Court is substantively different than whether the registry and notification requirements violate

the *Ex Post Facto* Clause.  Rather, the issue here is whether the criminal penalties associated with

SORNA violate the *Ex Post Facto* Clause when the Government seeks to enforce those penalties

against a defendant who is covered by the Interim Rule but who traveled in interstate commerce

before that Rule was issued.


In his Memorandum of Law, the defendant admits that when he moved from

Michigan to West Virginia during the Summer of 2005 he committed the federal crime of failing to

register as a sex offender in violation of 42 U.S.C. § 14072(g)(3) and (i).[5]  Under that statute, the

---

[5]42 U.S.C. § 14072(g)(3) and (i):

(g) Notification of FBI of changes in residence

*        *        *

(3) Individual registration requirement

A person required to register under

(continued...)

-10-

---

[5](...continued)

subsection (c) of this section or under a State sexual offender offender registration program, including a program established under section 14071 of this title, who changes address to a State other than the State in which the person resided at the time of the immediately preceding registration shall, not later than 10 days after that person establishes a new residence, register a current address, fingerprints, and photograph of that person, for inclusion in the appropriate database, with--

(A) the FBI; and

(B) the State in which the new residence is established.

\*       \*       \*

(i) Penalty

A person who is--

(1) required to register under paragraph (1), (2), or (3) of subsection (g) of this section and knowingly fails to comply with this section;

(2) required to register under a sexual offender registration program in the person's State of residence and knowingly fails to register in any other State in which the person is employed, carries on a vocation, or is a student;

(3) described in section 4042(c)(4) of

(continued...)

-11-

defendant is guilty of a misdemeanor with a maximum potential penalty of up to one year imprisonment.  Although the defendant admits to liability under this statute, he was not indicted for this offense.  Instead, he was indicted for violating SORNA, which is a felony, punishable by up to ten years imprisonment. *See* 18 U.S.C. § 2250(a).  In order to be convicted under SORNA, the Government must prove the following elements beyond a reasonable doubt:  (1) that the defendant is required to register under SORNA; (2) that the defendant travels in interstate commerce; and (3) that the defendant knowingly fails to register or update a registration as required by the Act.  With respect to these elements, the defendant contends that his change of address occurred prior to

_____

[5](...continued)

title 18, and knowingly fails to register in any State in which the person resides, is employed, carries on a vocation, or is a student following release from prison or sentencing to probation; or

(4) sentenced by a court martial for conduct in a category specified by the Secretary of Defense under section 115(a)(8)(C) of title I of Public Law 105-119, and knowingly fails to register in any State in which the person resides, is employed, carries on a vocation, or is a student following release from prison or sentencing to probation, shall, in the case of a first offense under this subsection, be imprisoned for not more than 1 year and, in the case of a second or subsequent offense under this subsection, be imprisoned for not more than 10 years.

42 U.S.C. § 14072(g)(3) and (i).

SORNA's enactment and there is no evidence that his travel to and from Ohio occurred on or after February 28, 2007, the date of the Interim Rule.  Therefore, the defendant argues he cannot be convicted under SORNA because he did not commit the elements of the offense after the statute became applicable to him and a retroactive application of the statute would result in an enhanced penalty in violation of the *Ex Post Facto* Clause.  After careful consideration of the issue presented, the Court agrees with the defendant.

In resolving this issue, the Court finds persuasive the decision in *United States v. Sallee*, No. CR-07-152-L (W.D. Okla. Aug. 13, 2007).  In *Sallee*, the defendant was indicted for failing to register under SORNA from September 22, 2006, through April 3, 2007, but his travel across state lines occurred approximately two years before SORNA was enacted. *Slip op.* at *1-2 & 5 n.6.  The Government argued the date of the travel did not matter so long as it occurred after the conviction which gave rise to the registration requirements in SORNA. *Id.* at *5.  The court, however, rejected this argument, finding it clearly was a retrospective application of the Act by "seek[ing] to capture travel that occurred prior to SORNA's enactment." *Id.* at *6.  In addition, the court recognized that the defendant faced a ten-fold increase in punishment if he were to be convicted under SORNA as opposed to a conviction under the Jacob Wetterling Act. *Id.*  Thus, the court had little difficulty finding the Government's construction ran afoul of the *Ex Post Facto* Clause. *Id.* at *6.[6]

---

[6]The court also found the Government's argument ignored the fact that "Congress used the present tense 'travels', rather than the past-tense 'traveled' or past-participle 'has traveled'" in § 2250. *Id.* at *5.  In this case, the defendant makes a similar argument, however, the Court finds it unnecessary to address the issue because the Court agrees with the defendant's *ex post facto*
(continued...)

Similarly, in *United States v. Bobby Smith*, 481 F. Supp.2d 846 (E.D. Mich. 2007), cited by *Sallee*, the defendant had moved from New York to Michigan before SORNA's enactment. 481 F. Supp.2d at 847. On January 18, 2007, the defendant was indicted for violating § 2250 and for violating the Jacob Wetterling Act, 42 U.S.C. § 14072(i). *Id.* at 848. The Government argued that applying § 2250 to the defendant did not violate the *ex post facto* doctrine for three reasons. *Id.* at 851-52. First, the Government cited the Supreme Court's *Smith* decision for the position that the registration requirements of SORNA are regulatory and not punitive in violation of the *Ex Post Facto* Clause. Second, the Government argued SORNA is comparable to other types of cases which have withstood *ex post facto* challenges, such as those involving felon-in-possession, child support, and practicing medicine without a license. Third, the Government contended that failing to register under SORNA is a continuing offense. *Id.*

In discussing the second and third arguments, the court found cases involving felon-in-possession, child support, and practicing medicine without a license are not comparable to cases under SORNA because they do "not address the central issue here–an increase in punishment for an existing offense." *Id.* at 852. Next, the court rejected the Government's argument that a failure to register is a continuing offense. Instead, the court found the violation "occurs on the 11th day after the defendant travels in interstate commerce" and fails to register. *Id.* Lastly, the court discussed the Supreme Court's decision in *Smith*. The court recognized that the *Smith* decision does not reach the enhanced criminal penalty question that arises under SORNA when a defendant

---

[6](...continued)
challenge.

-14-

traveled in interstate commerce before the effective date of the Act. *Id*. at 853.  The court held that the Government's attempt to prosecute the defendant under § 2250 when his travel occurred prior to SORNA's enactment violates the *ex post facto* doctrine because it resulted in an enhanced punishment for conduct that predates the Act. *Id*. at 854.[7]  In addition, the court concluded that the defendant did not even commit a crime under § 2250 because he traveled in interstate commerce before SORNA was enacted and Congress used the word "travels" as opposed to "traveled" in the Act. *Id*.  Therefore, the court dismissed the count charging the defendant with violating § 2250. *Id*.; *see also United States v. Heriot*, No. 3:07-323, 2007 WL 2199516 (D. S.C. July 27, 2007) (dismissing indictment alleging violation of SORNA when the defendant traveled in interstate commerce before SORNA's enactment and was indicted for failing to register on or about October 10, 2006.  The court found the defendant's obligation under SORNA did not arise until the Attorney General issued his rules on February 28, 2007.).

The Court recognizes that in the *Sallee*, *Bobby Smith,* and *Heriot* cases each of the defendants traveled in interstate commerce before SORNA's enactment on July 27, 2006.[8]  In this

---

[7]The court also noted that Congress placed § 2250 under Title 18 of the Criminal Code, as opposed to 42 U.S.C. § 14072(i) which is in the Public Health and Welfare section of the Code. *Id*. at 853.  The court said that this distinction evidenced  "Congress' intention to more severely punish a first offender, a critical factor, in *ex post facto* analysis." *Id*.

[8]In the *Bobby Smith* case the defendant also was indicted prior to the Interim Rule.  In *United States v. Marvin L. Smith*, No. 2:07-cr-00082, 2007 WL 1725329 (S.D. W. Va. June 13, 2007), and *United States v. Kapp*, 487 F. Supp.2d 536 (M.D. Pa. 2007), the courts found that SORNA did not apply to the defendants because the indictments charged the defendants with violating the Act before the Attorney General issued the Interim Rule.  Therefore, as the court explained in *Kapp*, "Defendants' indictments occurred in the brief window during which SORNA's scope remained undefined as to past offenders, and because § 113(d) required the Attorney General to animate
(continued...)

case, the travel alleged in the superceding indictment occurred in February of 2007.  In *United States v. Muzio*, No. 4:07CR179 CDP, 2007 WL 2159462 (E.D. Mo. July 26, 2007), the court described travel that occurred after SORNA's enactment but prior to the Attorney General's Interim Rule as falling within the "gap." 2007 WL 2159462, at *3.  As here, the defendant in *Muzio* was convicted of a predicate sex offense prior to SORNA's enactment, but he traveled in interstate commerce between the date of SORNA's enactment and the date of the Interim Rule. *Id*. at *2.  Upon finding that SORNA did not apply to the defendant before the Interim Rule was issued,[9] the court held that "because the criminal act is traveling and failing to register, the law cannot constitutionally be applied to . . . [the defendant], because those things were not crimes covered by this act when he did them." *Id*. at *5.  In the words of the court, this "gap" situation presented "a classic Ex Post Facto

---

[8](...continued)
SORNA's provisions to previously convicted offenders, SORNA did not apply to Defendants at the time of indictment."487 F. Supp.2d at 542.

      [9]The Government in *Muzio* argued that SORNA applied to the defendant before the Interim Rule was promulgated because the language of 42 U.S.C. § 16913(d) only applied "to prior sex offenders who were not able to *initially* register within the time limits specified by the act." *Id*. at *3 (emphasis original).  Although the title of subsection (d) indeed provides for "(d) Initial registration of sex offenders unable to comply with subsection (b) of this section," the court held that any question this title raises about the meaning of this section is negated by the plain language of the statute and the ordinary rules of statutory construction. *Id*. at *3-4.  The court found in reading the text of the statute it clearly extends beyond the scope of the title. *Id*. at 4; *accord United States v. Kapp*, 487 F. Supp.2d at 542 (holding "a careful reading of § 113(d) reveals that its reach extends beyond establishing the means by which unregistered sex offenders must first register"); *Marvin L. Smith*, 2007 WL 1725329, at *2-3 (citing *Kapp* for the position that "[p]ursuant to § 113(d) the Attorney General could have, at any time after July 27, 2006, determined that SORNA applied to only certain classes of past sex offenders, to all past sex offenders, or did not apply to any past offenders. . . . This reading of the statute, which is plain on its face, is further supported by the language of the Attorney General's interim rule, the examples given with the rule, the notice section of SORNA, as well as information given to the public by the Department of Justice.").

-16-

Clause violation[.]" *Id.*[10] This Court agrees with the analysis in *Muzio*.[11] For *ex post facto* purposes, the Court finds no appreciable difference between whether the travel in this case occurred before SORNA's enactment or before SORNA became applicable to the defendant when the Interim Rule was issued.  In either event, it requires a retroactive application of an element of the offense and is prohibited by the *Ex Post Facto* Clause as it imposes an enhanced penalty that did not exist at the time the defendant violated the Act.[12]

The Government further argues, however, that the defendant's failure to register is a continuing violation and, therefore, the fact he traveled before February 28, 2007 is irrelevant.  The Court disagrees.  As indicated by the defendant, there is nothing in the express language of 42 U.S.C. § 16913(b) or (c) that imposes a continuing duty to register or update a registration should the offender fail to do so within three business days.[13]  Moreover, even if the Court were to find a

[10]The *Muzio* court noted its disagreement with *United States v. Mason*, No. 6:07-cr-52-Orl-19JGG, 2007 WL 1521515 (M.D. Fla. May 22, 2007), and *United States v. Hinen*,487 F. Supp.2d 747 (W.D. Va. 2007).  *See also United States v. Gonzales*, No. 5:07cr27-RS, 2007 WL 2298004, at *10 (N.D. Fla. Aug. 9, 2007) (finding no *ex post facto* violation when travel occurred after SORNA's enactment but prior to the Attorney General's Interim Rule).

[11]*But see United States v. Gonzales*, No. 5:07cr27-RS, 2007 WL 2298004 (N.D. Fla. Aug. 9, 2007) (finding no *ex post facto* violation when travel occurred after SORNA's enactment but prior to the Attorney General's Interim Rule).

[12]Although the Government argued at the bench trial that the defendant could have traveled on February 28, 2007, the Government did not offer any proof on that matter and it was not part of the Stipulation of Facts. *Transcript,* at 28 (Aug. 6, 2007).  In its Response brief, the Government also argues that it has evidence that the defendant traveled to Ohio and back in March of 2007. *Response of the United States of America to Defendant's Memorandum of Law*, at 3.  The superceding indictment, however, only charges him with travel in February of 2007.  Therefore, the Court finds his alleged travel in March of 2007 is irrelevant to the present situation.

[13]Section 16913(b) and (c) provide:

(continued...)

-17-

continuing duty to register or update a registration,[14] the Court finds it should not be treated as a continuing offense for *ex post facto* purposes.  As the courts in both *Sallee* and *Bobby Smith* stated, a violation of § 2250 is not a continuing offense but, rather, is complete when the defendant travels in interstate commerce and then fails to register within the prescribed time period.[15] *Sallee*, No. CR-

[13](...continued)

> (b) Initial registration
>
> The sex offender shall initially register--
>
> (1) before completing a sentence of imprisonment with respect to the offense giving rise to the registration requirement; or
>
> (2) not later than 3 business days after being sentenced for that offense, if the sex offender is not sentenced to a term of imprisonment.
>
> (c) Keeping the registration current
>
> A sex offender shall, not later than 3 business days after each change of name, residence, employment, or student status, appear in person in at least 1 jurisdiction involved pursuant to subsection (a) of this section and inform that jurisdiction of all changes in the information required for that offender in the sex offender registry. That jurisdiction shall immediately provide that information to all other jurisdictions in which the offender is required to register.

42 U.S.C. § 16913(b) and (c); *compare* 50 U.S.C. § 856 (stating explicitly with respect to information about espionage or sabotage that "a "[f]ailure to file a registration statement . . . is a continuing offense for as long as such failure exists, notwithstanding any statute of limitation or other statute to the contrary").

[14]For instance, pursuant to 42 U.S.C. § 16916 a sex offender is required to make periodic updates.

[15]This fact makes it distinguishable from *United States v. Wilson*, 210 F.3d 230 (4th Cir. 2000), cited by the Government, in which there was an on-going and accruing child support
(continued...)

07-152-L, at *7 (quoting *Bobby Smith*, 481 F. Supp.2d at 852);[16] *see also Toussie v. United States*, 397 U.S. 112, 119 (1970)[17] (finding a continuing duty to register for the draft did not turn a failure to register into a continuing offense).[18]   Therefore, the Court rejects the Government's continuing

_____

[15](...continued)
obligation.

[16]In *Bobby Smith*, the court said "the crime occurs on the 11th day after the defendant travels interstate commerce from one jurisdiction to another, and fails to register after 10 days." 2007 WL 735001, at *5.  In that case, the defendant was required by New York to notify authorities within ten days of establishing a new residence.  In addition, 42 U.S.C. § 14072(g)(3) requires registration within ten days within moving to another State.  As stated in note 13, supra, the time frame under 42 U.S.C. § 16913(b) and (c) is three days.  Irrespective of what time frame applies, the point remains that the offense is not a continuing violation.

[17]*Modified by statute as recognized in United States v. Eklund*, 733 F.2d 1287, 1296 (8th Cir. 1984).

[18]In *Toussie*, the Supreme Court explained:

> There is also nothing inherent in the act of registration itself which makes failure to do so a continuing crime.  Failing to register is not like a conspiracy which the Court has held continues as long as the conspirators engage in overt acts in furtherance of their plot.  It is in the nature of a conspiracy that each day's acts bring a renewed threat of the substantive evil Congress sought to prevent.  The fact that the first draft registrations clearly were viewed as instantaneous events and not a continuing process indicates that there is nothing inherent in the nature of failing to register that makes it a continuing offense.

> We do not mean that the argument in support of implying a continuing offense in this case is insubstantial, but it is at best highly equivocal.  Basically we are faced with the task of construing a somewhat ambiguous statute in one of two ways.  One way would limit institution of prosecution to a period of five years following the initial violation, while the other could effectively extend the final date

(continued...)

offense argument.[19]

# IV.
## CONCLUSION

Accordingly, the Court concludes that to find the defendant guilty of the charge contained the superceding indictment would require a retroactive application of the statute and result in an enhanced punishment which violates the *Ex Post Facto* Clause to the Constitution. Thus, the Court **FINDS** the defendant **NOT GUILTY** of the charge contained in the superceding indictment and **CANCELS** the hearing currently scheduled for September 11, 2007.

---

[18](...continued)
for prosecution until as late as 13 years after the crime is first complete. As we have said before:

> "when choice has to be made between two readings of what conduct Congress has made a crime, it is appropriate, before we choose the harsher alternative, to require that Congress should have spoken in language that is clear and definite. We should not derive criminal outlawry from some ambiguous implication."

*Id.* at 122 (quoting *United States v. Universal C.I.T. Credit Corp.*, 344 U.S. 218, 221-222 (1952) (other internal citations omitted).

[19]In support of its position that it is a continuing offense, the Government cites *United States v. Husted*, No. CR-07-105-T (W. D. Okla. June 29, 2007). The Court has reviewed that opinion, but is unpersuaded by its decision. In addition, the Government cites *United States v. Hinen*, 487 F. Supp.2d 747 (W.D. Va. 2007), but the discussion in that case involved a continuing offense for purposes of venue and did not address it in terms of the *ex post facto* issue raised here. *Contra United States v. Roberts*, No. 6:07-CR-70031, 2007 WL 2155750 (W.D. Va. July 27, 2007) (holding there is no continuing offense under § 2250 in discussing venue). Therefore, the Court finds that case distinguishable.

The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to counsel of record and any unrepresented parties and to post this published Memorandum Opinion and Order on the Court's website.

ENTER:        September 7, 2007

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE